Call the case. 316-0143, Heather and Justin Terry as mother and father of Fallon Terry, a minor. Appellants by Michael Reagan v. OSF Healthcare Systems. Appellees by Kimberly Jansen. Please proceed. May it please the court, Ms. Jansen, my name is Mike Reagan and together with Todd Smith sitting with me at council table we represent the appellants plaintiffs Heather and Justin Terry. I'd like to first talk about jurisdiction, although feel free to cut me off if you wish me to move on to the merits before I do. The defendant here says, objects to jurisdiction under 304A, filed a motion to dismiss, that motion to dismiss was briefed and denied. And while we recognize that the court has the power to revisit the issue, we respectfully suggest that the matter was fully briefed then, and that the court's order denying the motion to dismiss was correct at that time, and we ask that that part of the brief which objects to jurisdiction be denied as well here. OSF can be expected to argue that our statements to the trial court did not relate to the jurisdictional challenge that they raise now. But there's a good reason for that, and that is that OSF did not make a jurisdictional challenge in the trial court, but rather simply objected to the no just reason to delay the enforcement or appeal of the earlier aspects of the rule, which is what both sides talked about in front of the trial judge, which was the appropriate thing, and it was the only thing that was under debate at that point in terms of whether the case should be stayed, and whether this would materially advance the, you know, whether there's any just reason. So 304A applies if multiple claims for relief are involved in an action, that's the wording of the rule. The Supreme Court over time has used several phrases to explain that requirement, but they all mean the same thing by the court's own statements. Cunningham in 1961 stated that jurisdiction lies where the bases of recovery are different. Heinrich versus Peabody in 1984 explained that the different bases of recovery, which was that first phrase, by saying that various theories of recovery require different elements to establish a proper claim, and we have that here. Another phrase which is prevalent in the case law is to inquire whether the order sought to be appealed disposed of a separate branch of a controversy, and that's frequently seen in the appellate opinions. They all mean the same thing, and they're used interchangeably, and each of them is satisfied here. So OSF's motion for summary judgment attacked all aspects of the agency relationship between itself and the documents, both actual agency and apparent agency. And what was left standing in the trial court was not attacked by the OSF motion, is the direct or institutional negligence claim against OSF. OSF has its own obligations, as demonstrated in the brief, not just as a hospital, but as a particular type of institution recognized by the government, a Level III neonatal intensive care unit. And OSF is required to ensure that the physicians practicing there have a specific set of skills, adhere to proper classifications, retinopathy of prematurity, progression in stages, as well as to ensure that the unit has and follows up on the latest care protocols. OSF relies on Wilson v. Edward Hospital, but that case is not helpful. Wilson involves solely a raised judicata issue, and it had nothing to do with 3 or 4A jurisdiction, and separate bases of recovery. And fundamentally, Cunningham himself, back in 1961, says that, quote, it does not matter in determining whether multiple counts allege multiple claims for relief, that recovery under one would bar recovery for additional damages under the other, which was the issue in Wilson, which is the key case of the other side. Lastly here, Carl Foundation v. Cunningham Township, which is the recent additional authority which the court granted leave to, sorry, dozens of OSF. The separate count which was appealed there, and I say count advisory, it was styled as a count in the circuit court, asked only one question on a declaratory judgment, and that is which version of the statute, the new or the old, applied to the rest of the claims in the case. And the court said that's not a proper 3 or 4A appeal because it didn't stand on its own, it wasn't a basis of recovery, and it was so dramatically insufficient that the court also said it couldn't even be the subject of a declaratory judgment, and so that does nothing. So here we have direct institutional negligence on one hand, which is the claim left behind in the circuit court right now, and vicarious liability without fault for the negligence of positions on the other hand, and those are different bases of recovery and separate branches of dispute in jurisdictions proper. So turning to merits, there are significant tribal issues of fact shown by the record on the question of OSF's apparent agency with respect to Doctors Hocker, McGowan, and Reddy. So Heather Terry, who is a young mother from Seneca, chose OSF as the place of care for both herself and her unborn child, who was going to be born very prematurely. She knew that her child would need very specialized care if born as early as was anticipated, and OSF had and widely advertised a particular unit, a Level III neonatal intensive care unit, and there are specialized requirements for such a unit, which are recognized and codified in the law. Dr. Hocker was designated as the medical director of that unit. Dr. McGowan was the associate director of the unit. Dr. Reddy was an ophthalmologist who was trained as screen infants for the problem here, which is retinopathy of prematurity. Heather did not know any of those doctors. She had not heard of any of them, and OSF assigned them to her. She went there because of OSF's advertised reputation. Plaintiffs contend that they are the apparent agents of OSF. Dilbert v. Hickmore Hospital in 1993, the Supreme Court took up what agency in what the court described as the unique setting of hospital in light of the words of the court, the reality of modern hospital care and the reasonable expectations of the public. Dilbert set out the elements to show apparent agency to be holding out by the hospital or its agent and that the plaintiffs weren't active in reliance on the conduct of the hospital or its agent. But Dilbert usefully went on to say how each of those requirements can be satisfied. Dilbert says that holding out, and these are the words of the court, is shown if the hospital holds itself out as a provider of care without informing, the obligation is upon the hospital without informing the patient that the care is provided by independent contractors. The second element, justifiable reliance, according to Dilbert, is satisfied if the plaintiff relies on the hospital to provide complete care rather than on a specific position. That is, if you knew that Dr. Jones practiced at OSF and you went there because you like Dr. Jones. That second element is not an issue in this case. In the first instance, both of these elements are satisfied here. OSF advertised itself as providing the highly specialized and immensely critical care which Heather and her child would require, and Heather relied completely upon the hospital to provide that care. Now, we are here before this court on the grant of summary judgment. And so the grant of the general principles which apply to the grant of summary judgment matter greatly here. Fundamentally, whether actual or apparent agency exists on the elements we just talked about are questions of fact, and Dilbert says so. Secondly, everything is to be liberally read and construed in favor of the plaintiff, who is the opponent to the motion for summary judgment, and all inferences must be taken in plaintiff's favor. Now, OSF grounds its appeal on the consent form, but that consent form is insufficient to support this summary judgment. We're not here after a trial. We're here without the plaintiff ever having been granted to present all the facts to a trial effect. So in the consent form, there are three sentences which are under examination here. It's longer, but I don't think there's any criticality in any of the other sentences. So the first sentence says that I consent to and authorize OSF to render such care as may be ordered or requested by the physician in charge or by authorized agents, employees, or members of the staff of OSF as they may in their professional judgment be necessary. The second critical sentence says that I recognize that certain, okay, certain physicians and allied professionals on the medical staff at the hospital, including my attending physician, Singelberg, physicians performing or interpreting tests, and other physicians such as consultants, radiologists, et cetera,  And the third sentence, which is at the end of the form, says that my decision to consent to treatment is based upon my understanding that OSF does not employ all of the physicians who treat me. The first sentence says she consents to be treated by agents of OSF. The second sentence, which is at the heart of OSF's position, says that certain physicians, including my attending physician, again in the Singelberg, and consultants or interpreting contractors. But is a patient to know exactly who and what the attending physician is, what that term means, when the hospital assigns all of the physicians? And is it misleading that it is stated in the singular when they attempt to get coverage for multiple physicians here? Is a young mother from Seneca facing her serious family problems to know who the, quote, attending is? A jury might conclude it would be reasonable for her to think that the attending physician might be her OBGYN, either at home or elsewhere at OSF. They rely a lot on the Steele case. They do. And before my time is up, I intend to speak about Steele, because Steele helps us, hurts them. It's very strong in that position. The third sentence introduces an additional aspect of uncertainty. It says that OSF does not employ all the physicians who treat her. So of necessity, of mathematical necessity, that categorically means that OSF does employ some of the physicians who treat her. And all these sentences must be read together. OSF can't be allowed to isolate the second sentence, accord its one favorable meaning to it in isolation, and then disregard the uncertainty created by the other two sentences. The circuit court, in grappling with this awkward form, asked counsel for OSF about the meaning of the language we've talked about. And the trial judge said, and permit my reading, please. Forgive it. It says certain, this is the trial judge, it says certain physicians are independent contractors. That's what that sentence says. When it says, including my attending physician, are you telling me, are you telling the patient, is it your interpretation of this form that this form is telling the patient that all attending physicians that work with this patient are not employees of OSF? They're independent contractors or, again, still the trial judge, or are you just saying some are and some aren't? And the plain answer in one sentence, one phrase from OSF's counsel was, some are and some are not. And that's exactly the opposite of OSF's position before this court. So OSF should be held to its position below, and, therefore, reversal is clearly called for. But if you don't strictly hold OSF to that position, reversal is still called for, because even if not strictly held to that position of some are and some aren't, the confusion created by that sentence, as interpreted by another one of their lawyers, is graphically demonstrated. They have two versions as to what that means. And I suggest that on a motion for summary judgment, it is clearly impermissible to say it has only one clear meaning and summary judgment is warranted. So this form is not at all like Cherokee. It's not like Gore. In Cherokee, the physicians group were listed by name. Gore, the court said, which is another case from this district, said where the form said all doctors were in service. And the case is like Steele, where the form said most physicians who provide physician services are not employees or agents. And it's also like Hander v. Barth, referring only to some or all of the physicians. So in Steele, this court now, the plaintiff lost in Steele, but the plaintiff lost in Steele on a different ground. It had to do with the clear statement that I don't care who the doctors are, okay? But that's not what we have here. The court held the found in favor of the plaintiff on the imprecision of the relationship and set her to consent. And italicized the words Dr. Moran because the court found the consent form to be insufficient because it did not make it clear that Dr. Moran himself was an independent contractor. So I'd like to just move quickly to the end of the discussion of Steele and suggest that a very key part of this court's holding in Steele states clearly what we believe the outcome should be in this case. And the court rejected their argument that there should be some flexibility in the test. The hospital said, well, you know, it doesn't have to be a completely precise form. There's some flexibility. And this court held, quote, that given the very high standard for entry of a JNOV, which, of course, is the same as summary judgment here, we find that the consent does not convincingly put plaintiff on notice that Dr. Moran, italicized by the court, is an independent contractor and thereby adequately defeat the holding factor. Now, I don't have time to do any other thing. The law is, and we've documented at this stage in the briefs, both parties, that even if there is a clear consent form, the court's still supposed to look at other factors, the badges, the coats, the office and the hospital, all of which exist here. And that's particularly true if the consent is not completely clear, and we have that here. So there's no possibility of the fact question not existing here. And when you consider that we're here on summary judgment, that we've been deprived of the opportunity of the trial, then I respectfully suggest that it must be reversed, if I may be so bold. We also have asserted actual agency of Drs. Hocker and McElwain. I'll rely on the brief. The key case there is Barber, and I believe it controls. Thank you, counsel. Thank you. Counsel. May it please the court. Counsel. You may proceed. So counsel referred to a number of different tests formulated and expressed by the courts over the years in deciding whether a claim presents a distinct claim for purposes of Rule 304A. But I want to focus today on the most recent pronouncement of the Supreme Court in the Carroll Foundation decision, which I think really lays out the analysis very cleanly and very nicely. The court in the Carroll Foundation told us that what we need to look at is the distinction between a claim and an ancillary issue related to that claim. And so obviously then the next question is, what is a claim and what is an issue? To explain what a claim is, the court looked at its decision in Best. A claim is something that presents a distinct basis for judgment. So in Best, it was a marital dissolution case. The cause of action in a marital dissolution case is, of course, dissolution. The other claim presented was a declaratory judgment claim seeking a declaration of the validity of a prenuptial agreement. 304A findings were appropriate. 304A jurisdiction was appropriate in Best because the declaratory judgment action presented a distinct basis for relief from the marital dissolution. The court could enter a judgment under declaratory judgment action alone, regardless of whether or not judgment would be appropriate in the underlying or the related marital dissolution action. An issue, in contrast, is something that does not present an independent basis for judgment. The court looked at Leopondo, another marital dissolution case, to illustrate that distinction. Now, in a marital dissolution case, you'll often have issues of custody and support and property distribution. All of those are certainly distinct issues from one another. They all certainly are separate and independent of one another. But they're all ancillary to what the actual cause of action is in a marital dissolution case, which is the dissolution of the marriage. You can't enter a judgment for custody or support or property distribution unless you actually enter judgment of dissolution on the marital dissolution claim. So how does that apply here? We know that the issue of OSF's vicarious liability based on the agency relationship with the doctors is merely an issue rather than a claim because it's clear that you cannot enter a judgment on the vicarious liability theory, the vicarious liability issue alone, independent of the distinct claim that is pending against the doctors, the individual doctors, for their negligence. And Mr. Reagan glossed over that claim. He indicated that the remaining claim was merely the institutional negligence claim against OSF, but that's not the only claim that remains pending before the trial court. Also remaining before the trial court is the direct negligence claim against the doctors themselves and a separate vicarious liability claim against OSF sort of based on the sub-agency theory that the doctors are service corporations who are agents of OSF. It's clear that judgment could not be entered on the agency or apparent agency theories alone because if judgment were entered against the plaintiff as to the doctor's negligence, you can't have a judgment against OSF for vicarious liability without also having a judgment on that negligence claim against the doctors. Or if plaintiffs succeeded in establishing liability against the doctors and also established its alternative vicarious liability theory of the sub-agency vicarious liability, that would also render this direct agency or apparent agency liability moved out. In the trial foundation, the Supreme Court made a point of noting that if resolution of other claims that remain pending in the case would render an issue moved, you know it's an issue and not a claim. It's not appropriate for 304A findings. It's not a distinct claim as to which 304A findings are proper. So assuming or should this court find that it has jurisdiction, I'll address the alternative arguments, the actual substantive arguments of actual and apparent agency. And on the apparent agency, I actually want to start from the opposite direction. Counsel started with the holding out element, but I wanted to start with the reliance element. And that's where we relied on this court's decision in Steele. In Steele, the consent form had included language indicating, I acknowledge that the employment or agency status of the physicians who treat me is not relevant to my selection of probena. And this court found that was sufficient to disclaim any reliance, excuse me, on a holding out of agency or employment relationship. In this case, certainly if not verbatim language, but the effect of the language is the same. The consent form in this case says, my decision to consent to treatment is based on my understanding that OSF St. Francis Medical Center does not employ all of the physicians who treat me. Now, I know counsel has emphasized that the portion that says, does not employ all of the physicians who treat me, inferring from that or implying that, well, the language suggests that OSF might employ some of the physicians. But I don't think that distinction matters for purposes of the disclaimer. The disclaimer indicates that I know at least some of the doctors are not employees of OSF. My consent to treatment here at this hospital is based on my understanding that the doctors who treat me may or may not be employed by OSF. If you consent based on your understanding that they might not be employed, it's difficult to argue that you were actually relying on the belief that they were employees in consenting to treatment. How were they dressed? Pardon? How were these three doctors dressed? What kind of outfits did they have on, the three doctors? I understand they had lab coats, I'm sure. What did it say on the lab coats? I would have to go back and look. I do believe that they may have had OSF badges on their lab coats. I don't think that vitiates or negates the language of the consent form. When she consented to treatment, she consented to treatment acknowledging that there's no representation that these are or are not employees. She understands that some of the doctors who are going to be providing treatment are not employees, and her consent is with the understanding that she may be receiving treatment from doctors who are not employees. At the time she signed that consent form, that was her clear understanding. She can say that, well, I didn't know, and there were all these other things that might have suggested. The language of the consent form is clear, and it's an express and direct disclaimer. Turning to the holding out element, I think the language there is also clear. The form says certain physicians, including my attending physician and consultants. There's no suggestion that Heather Terry didn't understand who the attending physicians were. There's no suggestion that she didn't understand who consultants were, and there's nothing about that language that is unclear. Really, ultimately, I think for purposes of holding out, the test really is focused on the language itself rather than necessarily subjective understanding of the language. Of course, everybody can say I understood this or I understood that, but as far as the holding out element, the focus is on what the hospital represented, what representations the hospital made. The hospital clearly informed her that certain physicians, including the attending physician and consultants, are independent contractors, and that's one distinction from HAMR, which they rely on. In HAMR, the form said some of the physicians who provide treatment may be independent contractors. The form in this case says these physicians are independent contractors. Just like in Cherokee, they identified the categories of physicians who fell within that independent contractor status. In Gore, this court focused on the clear and unambiguous language of the consent form. That's what we look to. There's nothing confusing about it. It's straightforward, it's clear, it's unambiguous, and under the cases, that was sufficient to feed a holding out. The hospital informed the terries of the independent contractor status. I'll touch very briefly on the actual agency issue as well. In HAMR, the court expressed the test very plainly. In determining actual agency, the court said, the key issue is whether the hospital has the right to control the physician's exercise of medical judgment in delivering medical care to patients. And there's no evidence for any of the three doctors that OSF had the right to control their exercise of medical judgment. Plaintiffs have effectively conceded this as to Dr. Reddy. They don't make an argument that Dr. Reddy was an actual agent. For Dr. Mekwan, they rely only on his title as associate director. There's no evidence that that title has any meaning whatsoever. To the contrary, the testimony was that every single doctor at Neonatology Associates, except for Dr. Hopper, used the title associate director. It's more or less a meaningless kind of boilerplate title. For all associate directors, for Neonatology Associates, it implies nothing whatsoever about a relationship to OSF directly. Well, it's marketed. Neonatal care is marketed by the hospital, right? This is in terms of the actual agency. There's no indication that whatever title Dr. Mekwan has or doesn't have is a title. There's no indication that title was given to him by the hospital. Counsel would like to infer that from the fact that Dr. Hopper didn't know where the title came from. But Dr. Hopper and Dr. Mekwan were both hired at the same time by Dr. Miller back when he was with Neonatology Associates. It's a title that's floated around in this separate independent organization. The fact that Dr. Hopper doesn't know where it came from doesn't mean that it's a title bestowed by OSF that has any sort of significance whatsoever. And there's no evidence whatsoever that OSF exercises control over Dr. Mekwan, that OSF pays Dr. Mekwan. They advertise they're a Neonatal Care Unit. I understand that they do. I believe there's some evidence in the record. So they talk about it. But they have a neonatal unit. Yeah. Two minutes, please. Sure. As far as Dr. Hopper, again, plaintiffs rely chiefly on that title, medical director. And they want to infuse it with all sorts of significance and meaning, but the record just does not substantiate. Medical director role is defined by the contract between Neonatology Associates and OSF. That's at 1274 of the record. The contract says that Neonatology Associates will provide a physician to serve in this medical director role. It does provide that the person who is selected should be approved by both OSF and by Neonatology Associates. Once the appointment is made, there's no provision whatsoever in the contract for control over the medical director by OSF. There's no provision in the contract for removal of somebody from the position of medical director by OSF. It's simply a physician hired by Neonatology Associates, which that entity supplies to OSF pursuant to its contract to provide, you know, certain administrative and teaching and clinical services to the hospital. Removal would be disallowing their privileges at the hospital. I guess that's how you can't work at the hospital anymore, whatever your capacity is. Well, I suppose that applies to every doctor who works at the hospital, of course, but the hospital can always revoke privileges. But I don't think that ultimate authority suddenly transforms every physician practicing. No, I guess that's, you can't work at the hospital anymore, even out there anymore, whoever you are and whatever capacity you have. And how that would then be resolved under the contract that Neonatology Associates is supposed to provide a physician, I'm glad that's not part of the record, because I think that would be a complicated issue. So the medical director is not an employee of the hospital? He is not, no. And so how can he supervise any other physicians? The other physicians within the neonatology unit are all independent contractors. So OSF contracts out the neonatology. The neonatal unit that is advertised, in essence, has no doctors accountable to the hospital? I believe that's correct. What is the neonatal unit? Certainly there's a whole... Is it a janitorial staff? Oh, there's a great deal. I would expect more than just the physician services. Obviously you've got all the equipment, the facilities, the nursing staff. So are the nurses employees? I believe the nurses are employed by the hospital, but I don't know that for certain. But directed by non-employees? I believe under... So the nurses can't treat? No, of course. I believe the terms of the contract suggest that the neonatology associates, independent contractors, will provide advice and assistance to the hospital. So it leaves the authority for administering the unit with the hospital, subject to advice and input and assistance from neonatology associates. Who are the neonatology assistants advising? I would presume that would be the medical director of the hospital. Who isn't working for the hospital? Well, the medical director... The medical director is very circular. Sorry. No, I understand. I believe that the administration at the hospital, there are still people there in charge that then they receive advice and assistance, so a collaborative sort of relationship. Is there a question? I think I've made my point. If this court has no further questions, I would simply ask that the court affirm the trial judge's decision.  Thank you. Counsel? So I'll begin the lightning round in sort of seriatim on the order. The court has just talked about and inquired about a whole range of fact questions, and a range of fact questions which go into determining one of the quintessential historically in the law questions, which is what is or is not an agent. I'll talk briefly about jurisdiction, in fact, only a sentence or two. She talks about this sub-agency theory. It is a complete red herring. It has to do with, if anything, with the agency relationship between the hospital and the practice groups, but that's not what we're talking about here. We're talking about agency relationships between the hospital and the doctors, and so that's really a diversion. A couple of general principles. The agency is a much broader concept than employment. You don't have to be an employee to be an agent. Agency is much broader than payment. You can be an agent without being paid. We've talked about how counsel has minimized the appointment of Hocker and Macron to their positions and professed maybe some wonderment as to how they were appointed. There's no doubt whatsoever. At page C-165, the question was asked, of Dr. Hocker, who told you that you get to be the director? Answer from Dr. Hocker, the administration. Question, the hospital, yes. So the hospital appointed him, and it is a fair inference for the trier of fact as to whether the hospital also appointed Dr. Macron as the assistant director. Payment is not required. It is really not an issue, but it is a fact which can be considered. And the next question is, are you compensated, of Dr. Hocker, are you compensated for your work as a director? Answer, yes, period. By the hospital, I take it, or by OSF? Indirectly. And then he goes on to explain how the hospital pays the money, and it goes to the university, and then it comes back to pay him to be the director. Justice Carter asked the question, how were they dressed? At page 8 of our reply brief, we document with copious citations to the record, they all wore identification badges provided by OSF with their name, their photograph, OSF's name, the ward they worked in, and the word medical staff written underneath. All three of the doctors at issue here had laboratory coats with their name and OSF's name on it, citations to the record, page 8 of the reply brief, and both Dr. Hocker and Dr. Macron had individual offices provided by the hospital within the ward at the hospital. Mrs. Winkler, who is the marketing director, who has been with the hospital for 32 years, testified in her deposition that she could not tell who were employees or not by looking at them, and that's documented at page 6 of our main brief. So even they could not tell from appearance, by dress, who the agents were. Reliance, they started off with something which I think is really not an issue at all in this case here, and that is did Heather rely on the hospital for the provision of care, and they have chosen to ground their position on Reliance on the weakest, most confusing sentence in the consent, which is that I understand that not all of the physicians are employed, and that's clearly not a disclaimer, but it points out the error which causes us to be here today, and although I realize, gratefully, that we are here on de novo review, and so that it doesn't matter what the trial judge said or did, except the end of the summary judgment, but he established this in depth in our brief. He thinks that the law is such that the hospital need only wave a red flag. Those are his words. They only need to wave a red flag, and then the obligation is upon the patient to figure things out, and that's clearly not the law. As this court said in Stegall, it is the obligation of the, that is where the hospital does not convincingly inform the plaintiff of the status of independent contractor, then the consent is insufficient, and I suggest respectfully to say that if they only wave the red flag about Reliance, putting the burden upon the patient to figure things out, that's just simply not the law whatsoever. Gilbert, I think, says, but there are clearly cases, and we've talked about them in the brief, that the patient is under no duty of inquiry, no duty of inquiry, and that silence is sufficient. If the patient does nothing, says nothing, the patient can still win on this, and the obligation is upon the part of the hospital to convincingly affirm. You know, we get back to the question of some are and some aren't. Actually, there's a question and answer from counsel. Some are and some aren't. It appears from the record that the trial court here thought there was a duty to inquire further by the mother. Exactly. That's exactly what the trial judge was talking about here, and that's not the law. It clearly is not the law. But that's what he thought the courts were saying. That's what he thought the courts were saying, and he said that I don't understand, and again, with all due respect to the trial judge, I mean, I've spent a lot of time to come to this understanding of the law, but he said I don't understand what these cases are saying, and that's one of the reasons that he looked at the appeal bill forward, because he said, you know, I'd like to have the answer now, and I suggest, again, that the answer, it lies throughout the law, but it also lies in Steele, where the statement was made on that part of the case, that if there is not a convincingly informative job done by the hospital, because Gilbert says that you can beat holding the hospital, the patient establishes holding out by showing that he wasn't informed, or the hospital, rather, has to show that they were informed. It would be a different case if the consent form said not any of the physicians. It would be a different case. I would have to say we still don't lose, because the law is in spades, that you also have to look at all the other factors in the case, such as the rest of the language in the consent form, such as the address, the badges, the office, you know, those kinds of things. But it would be a different case. It would be a different case. It would be a better case. Because not all implies that there must be one, and in this case there were none. Is that correct? I'm not sure I understand the court's question. Not all implies there must be some. Absolutely. And in this case there were none. I don't quite understand the none part, but I will. Did anybody treat this patient who was an agent, somebody wearing a coat, and identified them as being affiliated with something other than the hospital? No, they did not. So there's my none. Right, there's your none. I'm glad I consistently didn't understand. It would be a different case. And there's some branch of mathematics, I suppose it's Boolean logic, but it puts it in words that if not all are, then there's some are. Thank you. Thank you, counsel. Thank you both for your arguments. And the court will take this under advisement, and we'll adjourn for a panel of games. Thank you. Ladies and gentlemen, please rise. The court stands at ease.